UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff/Respondent, | ) ) | No. 6:16-CR-56-2-GFVT-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION |
| MICHAEL SHANE MCCORMICK, Sr., | ) ) | |
| Defendant/Movant. | ) ) | |

*** *** *** ***

Federal prisoner Michael Shane McCormick, Sr., has filed a motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 316, 319. McCormick attached a sworn declaration to his motion. D.E. 319-1. The government responded in opposition and included the affidavit of McCormick's trial-level counsel, Hon. H. Wayne Roberts, the only proposed plea agreement in the case, a 2017 letter from Roberts to McCormick, and a 2019 letter from McCormick to Roberts. D.E. 343. McCormick timely replied. D.E. 347. The record contains transcripts of McCormick's rearraignment (D.E. 324), sentencing (D.E. 325, 326), and evidentiary hearing (D.E. 456).

McCormick's motion raises three grounds for relief:

(1) Trial counsel was ineffective for failing to file a notice of appeal. D.E. 319 at 2.

(2) Trial counsel was ineffective for failing to object to the Presentence Investigation Report ("PSR"). *Id.* at 3.

(3) Trial counsel was ineffective for failing to secure a favorable plea deal or communicate the existence of one. *Id.* at 3-4.

1

Given the factual dispute as to whether McCormick instructed his trial attorney to appeal, after COVID-related delays, the Court conducted an evidentiary hearing on July 1, 2021. D.E. 454. The Court appointed Hon. Bryan Sergent to represent McCormick for the purposes of the evidentiary hearing and post-hearing briefing on Ground One. D.E. 361. McCormick and his trial counsel testified. D.E. 456. The hearing transcript was filed in the record. *Id.* McCormick, through counsel, filed a post-hearing memorandum on August 9, 2021. D.E. 458. This brief exclusively addresses Ground One. *Id.* That same day, McCormick filed a *pro se* memorandum stating that he received a copy of a plea deal with his trial counsel's affidavit that he had not previously seen. D.E. 459. The government filed its memorandum on August 23, 2021. D.E. 461.

As previously noted, Grounds Two and Three are so lacking in merit that no additional evidence is necessary. D.E. 361. As to these grounds, the Court recognizes that McCormick is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

2

## I. Background

In June 2017, McCormick entered an open plea of guilty to conspiracy to distribute and possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, possession of a firearm during a drug trafficking offense, and felon in possession of a firearm.  D.E. 156.  By Judgment entered October 12, 2018, McCormick was sentenced to 216 months of imprisonment on each of the drug charges and felon--in-possession charge, to run concurrently, and 60 months of imprisonment on the possession of a firearm during a drug trafficking offense charge, to run consecutively, for a total term of imprisonment of 276 months.  D.E. 300.

At sentencing, District Judge Van Tatenhove granted the government's motion for a one-level downward departure, making McCormick's offense level 33.  D.E. 326 at 10.  Thus, with a criminal history category of VI from his career offender status and an offense level of 33, McCormick's Guidelines Range became 235 to 293 months, with an additional consecutive 60 months stemming from the 18 U.S.C. § 924(c) offense.[1]  *Id.* at 10-11; D.E. 325 at 31-32.  Judge Van Tatenhove also found that McCormick's age warranted a slight downward variance from the bottom of this range to 216 months.  D.E. 325 at 37, 39.  On the date of sentencing, McCormick signed the Advice of Right to Appeal form, which notified him that any notice of appeal was due within 14 days.  D.E. 299.  Neither McCormick nor his trial counsel filed a notice of appeal.  On August 8, 2019, per the prison mailbox rule,[2] McCormick timely filed his motion under § 2255.[3]  D.E. 316.

---

[1] McCormick was designated a career offender and armed career criminal under the Guidelines.  D.E. 325 at 15, 16.
[2] Under the prison mailbox rule, a court filing is considered to be received by the Court the moment an inmate deposits it in the institution's legal mail system. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).
[3] McCormick's first filing was not signed under penalty of perjury.  *See* D.E. 316.  The Court ordered McCormick to resubmit a signed version of his § 2255 motion, which was filed on September 12, 2019.  D.E. 319.  Though the filing

## II. Legal standards for IAC

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

An ineffective-assistance-of-counsel ("IAC") claim presents a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003). To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

---

at Docket Entry 319 serves as McCormick's official § 2255 motion, the filing at Docket Entry 316 tolled the statute of limitations.

might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice under the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id.* at 695.

> Strickland asks whether it is reasonably likely the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (quotation marks and citations omitted).

To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

In the context of guilty pleas, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, a defendant's "claims of ineffective assistance [that] do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier alleged constitutional

deprivations" are waived. *United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001). As such, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The law is "clear that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). In such cases, prejudice is presumed, "regardless of whether the appeal would have been successful or not." *Ludwig*, 162 F.3d at 459.

The Sixth Circuit has summarized the appropriate analysis, as outlined by the Supreme Court in *Flores-Ortega*:

> First, we must determine whether the defendant gave counsel express instructions regarding an appeal. Second, if we find that the defendant did not provide express instructions, then we must determine whether counsel consulted with the defendant about an appeal. Finally, if there was no consultation, then we must decide whether the failure to consult was objectively unreasonable.

*Johnson v. United States*, 364 F. App'x 972, 975–76 (6th Cir. 2010) (discussing *Flores-Ortega*, 528 U.S. 470, 478-86 (2000)). As to the second step of the analysis, the Supreme Court has defined "consultation" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.

If counsel fails to consult with his client, the Court must determine whether the failure to consult was unreasonable by determining whether "(1) a rational defendant would want to appeal

(for example, because there are nonfrivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Johnson*, 364 F. App'x at 975 (quoting *Flores-Ortega*, 528 U.S. at 480). In making this determination, the Court "must consider all the information counsel knew or should have known." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). Factors for consideration include "whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to the judicial proceedings." *Flores-Ortega*, 528 U.S. at 480. The Court must also consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

To show prejudice, a defendant must prove that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "The question is whether [the defendant] 'would have' appealed, not whether 'his hypothetical appeal might have had merit.'" *Johnson*, 364 F. App'x at 977 (quoting *Flores-Ortega*, 528 U.S. at 486). The remedy for this type of *Strickland* violation is a delayed appeal. *Campbell*, 686 F.3d at 360.

Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Strickland*, 466 U.S. at 697.

### III. Hearing Testimony

At the evidentiary hearing, McCormick testified that, although he could not "remember all [of] the facts[,]" he believed the first meeting with his trial counsel involved discussing a proposed plea agreement that included two life sentences. D.E. 456 at 7. McCormick testified that he told Roberts he would "never sign nothing like that" and would rather go to trial. *Id.* McCormick also

testified that he told Roberts if he lost at trial, he would want to appeal. *Id.* at 7, 9-10. McCormick stated that Roberts advised him not to accept the proposed plea deal and that he would keep his rights to appeal if he went to trial. *Id.* at 9-10.

According to McCormick, Roberts later indicated that his chances of success at trial were bleak and suggested that he enter an open plea. *Id.* McCormick testified that he told Roberts he wanted Roberts to appeal "if things was to turn out bad for sentencing and [McCormick] didn't feel like [he] was treated fairly." *Id.* at 11. McCormick also stated that Roberts indicated he would not be sentenced to any more time in prison than his co-defendants. *Id.* Because his son received the highest imprisonment term, 188 months, McCormick stated that he was expecting to receive 180-190 months for his sentence. *Id.* McCormick testified that he told Roberts prior to sentencing that if his sentence did not "turn out like that, we'll appeal." *Id.* McCormick also admitted that Roberts counseled him on the risks and rewards of appealing. *Id.* at 12. Further, according to McCormick, Roberts stated that, although he thought doing so would be frivolous, he would file an appeal if that is what McCormick wanted. *Id.*

McCormick testified that, after his sentence was announced, he was "a little heated over it" and told Roberts, "Thanks, but you was no help." *Id.* at 13. According to McCormick, Roberts stated that they could file an appeal and McCormick responded by stating, "Well, you need to do that." *Id.* McCormick stated that, following sentencing, he did not remember receiving a copy of the Judgment from Roberts. *Id.* at 14. McCormick testified that he called Roberts multiple times and added him to CorrLinks, a prison e-mail system, but never received a response. *Id.* Then, several months later, McCormick sent a letter to Roberts asking why he did not file an appeal as discussed. *Id.* at 15.

During cross examination, McCormick was asked about having represented to the Court that he was never presented with a plea agreement. He stated, "I think I meant to put 'an agreeable plea agreement." when asked why he stated, under oath, in his reply memorandum (D.E. 347) that he "never knew of the existence of a plea offer in the first place." D.E. 456 at 22; D.E. 347 at 3. McCormick also testified he understood that he had fourteen days from the entry of the Judgment to file an appeal. *Id.* 27-28. McCormick acknowledged he has a prior conviction for providing an officer a false name or address from 2002. *Id.* at 35.

Roberts testified that, during his thirty years of practice, he has always filed an appeal when directed to do so by his clients. *Id.* at 46-47. Further, Roberts stated that, in the event he does not agree that an appeal should be filed, he will still make the proper filing along with a motion to withdraw. *Id.* Roberts further testified that he wrote a letter to McCormick in April of 2017 memorializing several of their discussions regarding the case. D.E. 456 at 48-52. The letter includes Roberts's opinion that McCormick's Guidelines Range was potentially 322 to 387 months. D.E. 456 at 48-52; D.E. 343-1 at 6. The letter also states that Roberts would request potential changes to the previously proposed plea deal. D.E. 343-1 at 6-7; D.E. 456 at 53.

Roberts also testified that McCormick "misled" him as to the facts of the case. D.E. 456 at 54. Initially, McCormick told Roberts that he had no involvement in the drug conspiracy and that all of the involved firearms belonged to his co-defendants. *Id.* Because the proposed plea agreement included major discrepancies compared to McCormick's version of events, Roberts testified that he could not recommend that his client sign it. *Id.* at 54-55. Thus, Roberts recommended an open plea in order to preserve McCormick's appellate rights. D.E. 343-3 at 1; D.E. 456 at 56. However, following his open plea, McCormick cooperated with the government and his version of the facts changed, aligning with the facts included in the plea deal. D.E. 456 at

9

55-56. McCormick admitted that several of the guns belonged to him and that he traveled to Tennessee to buy kilos of meth. *Id.*

According to Roberts, McCormick never told him that he "definitively wanted to appeal." *Id.* at 57. As to sentencing, Roberts testified that he assumed his client understood the information in the Advice of Right to Appeal form since McCormick read the document. *Id.* at 61. Roberts also testified that McCormick did not direct him to file an appeal on the date of sentencing. *Id.* According to Roberts, he believed that McCormick understood, based on their conversation, that he "received a break on his sentence." *Id.* at 62.

On cross examination, Roberts stated that he has had several medical issues arise, including while he represented McCormick. *Id.* at 66-67. However, Roberts later indicated the health issues did not impact his representation and that an appeal was "nothing . . . [he] couldn't do." *Id.* at 79. According to Roberts, he told McCormick that "if things [didn't] go to his satisfaction, then he [could] appeal it." *Id.* at 68. Roberts stated he recommended an open plea to his client for "several reasons," including the disparity between McCormick's version of events and what was alleged in the proposed plea agreement. D.E. 456 at 70. When pressed, he agreed that his affidavit (D.E. 343-3) and letter to McCormick (D.E. 343-1 at 6-7) only identify preservation of appellate rights as reasoning for the recommendation to reject the proposed agreement. D.E. 456 at 70. Roberts testified that McCormick never communicated that "he wanted to appeal if he wasn't satisfied with the sentence[.]" *Id.* at 74.

Contrary to McCormick's testimony that Roberts did advise about the risks and rewards of appealing, Roberts stated there was no such consultation. *Id.* at 75. He explained that he believed there were no non-frivolous grounds for appeal because he "did not have the information in order to say that the government failed" in any way. *Id.* at 75-76. Roberts acknowledged he knew

10

McCormick was not happy at sentencing but did not ask if he wanted to file an appeal. *Id.* at 77. Roberts testified that McCormick told him, "Thanks for nothin'." *Id.* Roberts stated that he sent a copy of the Judgment to McCormick, but did not otherwise contact his client after sentencing. *Id.* at 80-81. Roberts stated that, while he did not ask his client explicitly if he wanted to appeal, they did have several conversations prior to sentencing about his desires and Roberts told McCormick to let him know if he wanted to appeal an unreasonable sentence. *Id.* at 82. Roberts testified that these conversations were one-sided, McCormick just listened, and he never asked what his client thought an unreasonable sentence was. *Id.*

Roberts stated, while reviewing the Advice of Right to Appeal form at sentencing, he told McCormick that "Judge Van Tatenhove went down to the low end" as to the imposed sentence, that the sentence was reasonable, and that the document explained his rights to appeal. *Id.* at 83-86. However, Roberts then testified that he did not include this concept of a "good sentence" in his affidavit (D.E. 343-3) addressing the ineffective-assistance claim because he "might be wrong." D.E. 456 at 86. Roberts responded in the negative to being asked, "Is it possible that [McCormick] told you to file an appeal and you didn't hear him because you were walking away?" *Id.* at 86-87. Roberts also reiterated that the context of his and McCormick's discussions regarding a potential appeal were "if the sentence was not within the guideline range or something like a life sentence or whatever, then he could appeal and he'd let me know that's what he want[ed]." *Id.* at 87.

In response to the Court's questioning, Roberts indicated he did not have any discussions with McCormick "about the sentences that were imposed upon the co-defendants in the case" or compare "what sentence [he] thought Mr. McCormick's sentence might be to any sentence that any co-conspirator received." *Id.* at 91.

11

## IV. Ground One – IAC for Failure to File an Appeal

### A. Express Instruction to File an Appeal

In considering McCormick's first ground for relief, the Court must determine whether he gave Roberts express instructions regarding an appeal. *Johnson v. United States*, 364 F. App'x 972, 975–76 (6th Cir. 2010). The testimony from both witnesses is consistent that, at bottom, McCormick was not happy at sentencing and he knew if he was not satisfied with the outcome of sentencing, then he could appeal. However, there is a discrepancy as to whether McCormick expressly told Roberts to appeal.

During the hearing, McCormick asserted that he told Roberts that, if he lost at trial, he would want to appeal. D.E. 456 at 7, 9-10. Of course, he later decided to plead guilty. McCormick also testified he told Roberts that he wanted his counsel to appeal if things "turn[ed] out bad for sentencing and [McCormick] didn't feel like [he] was treated fairly." *Id.* at 11. McCormick stated that Roberts told him that he would not be sentenced to any more time in prison than his co-defendants. *Id.* Because his son received highest imprisonment term, 188 months, McCormick stated that he was expecting to receive 180-190 months for his sentence. *Id.* McCormick testified that he told Roberts prior to sentencing that if his sentence did not "turn out like that, we'll appeal." *Id.* McCormick also testified that, after his sentence was announced, he was "a little heated over it" and told Roberts, "Thanks, but you was no help." *Id.* at 13. According to McCormick, Roberts stated that they could file an appeal and McCormick responded by stating, "Well, you need to do that." *Id.*

Conversely, Roberts testified that McCormick did not direct him to file an appeal on the date of sentencing. *Id.* at 61. Prior to sentencing, Roberts testified that he told McCormick that "if things don't go to his satisfaction, then he can appeal it." *Id.* at 68. Roberts also acknowledged

he knew McCormick was not happy at sentencing and did not ask if he wanted to file an appeal. *Id.* at 77. Roberts testified that McCormick told him, "Thanks for nothin'." *Id.* Roberts later clarified that McCormick "wasn't happy. It's a long sentence." *Id.* at 80. Roberts stated that, while he did not ask McCormick explicitly if he wanted to appeal, they did have several conversations prior to sentencing about his desires and Roberts told McCormick to inform him if he wanted to appeal an unreasonable sentence. *Id.* at 82. Roberts also reiterated that the context of his and McCormick's discussions regarding a potential appeal were "if the sentence was not within the guideline range or something like a life sentence or whatever, then he could appeal and he'd let me know that's what he want[ed]." *Id.* at 87. Roberts also testified that he did not discuss with McCormick "the sentences that were imposed upon the co-defendants in the case" or compare what he "thought Mr. McCormick's sentence might be to any sentence that any co-conspirator received." *Id.* at 91.

The undersigned finds that McCormick has not met his burden of showing by a preponderance of the evidence that he expressly instructed his trial counsel to file an appeal. The only potential occurrence of an express instruction was directly after sentencing when McCormick claims he told Roberts to file an appeal. The testimony of the witnesses directly conflicts on this issue. The undersigned finds that Roberts's testimony is more credible because it is consistent with other matters in the record. On the other hand, where the two witnesses have inconsistencies in their testimony, McCormick's directly relates to his own self-interest and has no corroborating support. *See United States v. Walls*, No. 2:05-cr-92-WOB, 2008 WL 927926, at *12 (E.D. Ky. Apr. 4, 2008) ("A petitioner's self-serving statements in an affidavit that are contradicted by a credible version of events in an affidavit from his trial counsel may be incredible as a matter of

law.") (citing *Gibson v. United States*, No. CV-06-5740, 2007 WL 210417, at *4 (E.D.N.Y. Jan. 25, 2007)).

McCormick relies heavily on the allegation that Roberts stated he would not receive a harsher sentence than his co-defendants in support of his claim that he instructed his trial counsel to appeal. This assertion is not credible because objective evidence in the record undercuts it. Roberts testified that he did not discuss the sentences imposed upon the co-defendants or compare McCormick's potential sentence to theirs. D.E. 456 at 91, 96. Roberts's letter to McCormick describes his potential Guidelines Range as being 322-387 months, which includes the consecutive 60 months from the 924(c) offense. D.E. 343-3 at 1. The letter makes no mention of the co-defendants' sentences. Roberts also testified that almost all of the co-defendants were cooperating with the government and were going to testify against McCormick. D.E. 456 at 92. It was not until after he pleaded guilty that McCormick decided to also cooperate with the government. *Id.* at 55.[4]

Further, Roberts testified he was concerned about McCormick's criminal history, potential sentencing enhancements, the gun offense, drug quantity, and career offender status. *Id.* at 91, 95-96. Because of this, Roberts believed McCormick would possibly "get a lot more" time than his co-defendants. *Id.* at 96. McCormick argues that Roberts's discussion of the co-defendants' sentences during his own sentencing supports his claim. D.E. 458 at 2-3. At sentencing, Roberts recommended "180 months on the drug charges" and "60 months on the gun charges[,]" to run consecutively, for a total term of imprisonment of 240 months. D.E. 325 at 24. Roberts did mention the sentences of the co-defendants during his recommendation to the Court, noting that

---

[4] It was also at this point that McCormick changed his version of the facts and revealed that he had been misleading Roberts regarding his involvement in the conspiracy. *Id.* at 54-56. McCormick does not refute that he misled his trial counsel, which is another factor weighing against his own credibility and bolstering Roberts's testimony.

Mr. Money received 144 months, and Mr. McCormick, Jr., received 188 months of imprisonment. *Id.* Roberts also noted that Mr. McCormick, Jr., was not a career offender but that Mr. Money did have that status. *Id.* Roberts stated that it was McCormick's criminal history that was "killing him." *Id.* at 27. While Roberts's recommendation on the drugs and 922(g) offenses was 180 months, which is similar to McCormick's son's sentence, his recommendation also included the consecutive 60 months for the 924(c) offense, for a total term of 240 months. D.E. 325 at 24. Roberts even stated during sentencing that McCormick's sentence was "going to be a lot more" in comparison to the sentences received by his co-defendants. *Id.* at 27. Roberts also testified at the evidentiary hearing that he was concerned about McCormick's criminal history, which is supported by his statements during sentencing. D.E. 456 at 91, 95-96. Thus, these significant distinctions between McCormick and his co-defendants, which are undisputed, undercut McCormick's claim that he expected to receive a similar sentence to theirs, communicated that expectation to Roberts, and instructed him to appeal when that did not happen.

McCormick also states that Roberts's discussion of the criminal histories of the co-defendants during sentencing is "the reason [he] was so upset because he believed he was getting a sentence closer to the other codefendants." D.E. 458 at 3. This is a far cry from being explicitly told by his trial counsel that he would not receive a sentence higher than his co-defendants. Indeed, Roberts's own sentencing recommendation was much higher than the referenced co-defendants' sentences due to the consecutive 60 months stemming from the 924(c) conviction. McCormick's statutory minimum was 240 months, which Judge Van Tatenhove explained at sentencing he could not "pierce." *Id.* at 6-7. This alone makes McCormick's assertion that his counsel stated he would not receive more than 188 months of imprisonment, the most a co-defendant was sentenced to, not credible. Further, the letter Roberts sent to McCormick included the estimated Guidelines Range,

15

which also stated McCormick may face life imprisonment if the career offender designation applied. D.E. 343-1 at 6-7. This letter is devoid of any notion that McCormick would receive a similar sentence to those of his co-defendants. Because the context of the case undercuts McCormick's claimed motivation to appeal, his testimony that, because of that motivation he instructed Roberts to appeal, is not credible.

As to the letter McCormick wrote to Roberts, this does not indicate that he explicitly told his counsel to file an appeal. Rather, the letter states, "Why you didn't go on and file a[n] appeal for me I don't know." D.E. 343-1 at 4. McCormick testified at the evidentiary hearing that the letter implies Roberts knew his client asked him to file an appeal. D.E. 456 at 41. However, such a vague statement does not indicate McCormick expressly told Roberts to file an appeal. In comparison, Roberts testified that he has always filed a notice of appeal when directed to do so by his clients. Both witnesses testified that McCormick was upset after the sentencing hearing and told Roberts "Thanks for nothing" or words to that effect. *Id.* at 13, 77.

It is true that Roberts's testimony and affidavit have some discrepancies between them, such as whether Roberts explicitly told McCormick he received a reasonable sentence (*id.* at 84-86) and the reasons for recommending an open plea (*id.* at 70). However, the portions of Roberts's testimony central to McCormick's claims are supported by evidence in the record. On the other hand, the context as to why McCormick claims he instructed Roberts to appeal is inconsistent with the record. The record supports Roberts's version that no express instruction was given.

After reviewing the testimony from the evidentiary hearing, exhibits, and record as a whole, the undersigned finds that, because his testimony was not credible, McCormick has not met his burden to show that he expressly instructed his trial counsel to file an appeal.

16

**B. Consultation Regarding an Appeal**

Next, the Court must determine whether Roberts consulted with McCormick about an appeal. The Supreme Court has defined "consultation" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). According to McCormick's own testimony, Roberts did consult with him:

> Q. Did you -- did he ever come to you and talk with you and tell you what the risks, rewards were for appealing?
> A. Yes.
> Q. When did he do that?
> A. Maybe before sentencing.
> Q. And what did you and he discuss when you -- when he told you what he thought?
> A. He said -- he still said that my appeal would probably be frivolous, but if he wanted – I wanted to appeal, he would.

D.E. 456 at 12. Thus, McCormick concedes this point through his own testimony, and, because he carries the burden in proving his grounds for relief, denial of Ground One on this independent basis is appropriate. *See Johnson*, 364 F. App'x at 975 (stating "If counsel has consulted with his client, then counsel cannot be found to have acted unreasonably unless he ignored his client's express wishes.").

However, Roberts testified that he did not discuss what the strengths and weaknesses of the case and potential appeal were with McCormick:

> Q. Prior to sentencing at any time in this case did you tell him what the strengths or the weaknesses of an argument were, what the strengths and weaknesses of his appeal were, or what the risks and benefits of an appeal were at any point in time?
> A. No. Because again, I did not have the information in order to say that the government failed to do this, failed to do that. And then again, after we had the sit-down downstairs, it came to light that the government was accurate in everything that they proposed.

*Id.* at 76. In any event, even if Roberts is correct that he did not consult with McCormick about an appeal, this does not end the inquiry. Instead, when counsel fails to consult with his client, the

17

Court must analyze whether the failure was objectively unreasonable by determining whether "(1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Johnson*, 364 F. App'x at 975 (quoting *Flores-Ortega*, 528 U.S. at 480). In making this determination, the Court "must consider all the information counsel knew or should have known." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). Factors for consideration include "whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to the judicial proceedings." *Flores-Ortega*, 528 U.S. at 480. The Court must also consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

First, McCormick pleaded guilty, which, together with his eventual cooperation with the government, indicates he desired an end to the judicial proceedings. However, McCormick entered an open plea to preserve his appellate rights. McCormick testified that Roberts told him an appeal would likely be frivolous. D.E. 456 at 12. Further, McCormick has not presented any non-frivolous grounds for an appeal. While his § 2255 motion makes an ineffective assistance of counsel claim for failure to object to the PSR, as the Court will later discuss, this claim is without merit and does not amount to a non-frivolous ground to appeal. Thus, there is little room for a finding that a rational defendant would have wanted to appeal.

Further, the record shows Roberts's previous opinion on the applicable Guidelines Range was reasonably accurate, so when McCormick received a sentence below that Range an appeal was not reasonably likely. As indicated in his letter, Roberts predicted McCormick's Guidelines Range would be 322-387 months, including the consecutive 60 months from the 924(c) offense.

18

D.E. 343-1 at 6.  Roberts also indicated that the career offender designation meant there was a "possibility that [McCormick] could be looking at life." *Id.*  Roberts made clear that this was only his opinion and that he would not know the actual Guidelines Range until the PSR was completed. *Id.*

At sentencing, Judge Van Tatenhove granted the government's motions to reduce McCormick's offense level reducing it from 37 to 33, with a criminal history category of VI.  D.E. 326 at 10; D.E. 325 at 11-12.  This made McCormick's Guidelines Range 235 to 293 months with "the five-year consecutive on top of that" from the 924(c) charge.  D.E. 326 at 10-11.  However, McCormick's statutory minimum was 180 months based on the 18 U.S.C 922(g) charge.  *Id.* at 5-6.  This plus the mandatory consecutive 60 months from the 924(c) charge made his statutory minimum 240 months, which Judge Van Tatenhove explained he could not "pierce."  *Id.* at 6-7.  Judge Van Tatenhove confirmed McCormick understood this and that Roberts had previously explained the statutory minimum to him.  D.E. 325 at 31-32.  Judge Van Tatenhove later stated he would vary below the Guidelines Range after considering McCormick's age and the goals of 18 U.S.C. § 3553, resulting in a sentence of 216 months on the drug and 922(g) charges, to be served concurrently, and 60 months on the 924(c) charge, to be served consecutively, for a total imprisonment term of 276 months.  D.E. 325 at 37-39.

Further, Roberts testified that all of his conversations with McCormick regarding his appellate rights were one-sided and that he told McCormick to let him know "if he wanted to appeal a sentence that was unreasonable."  D.E. 456 at 82.  Roberts stated that the discussions regarding an appeal did not include that "if [McCormick] was dissatisfied, he'd wanted to appeal, or he would appeal."  *Id.* at 87.  Instead, Roberts clarified, "the component was, . . . if the sentence was not within the guideline range or something like a life sentence or whatever, then he could

appeal and he'd let me know that's what he want[ed]." *Id.* Roberts stated, "[McCormick] wasn't happy. It's a long sentence[,]" indicating that he believed McCormick's unhappiness stemmed from the general length of the sentence. *Id.* at 80. This is supported by Roberts stating, "Again, . . . in this case, the sentence was extremely reasonable." *Id.* at 82. Indeed, McCormick received multiple breaks via downward departures and variances, and he has not demonstrated how his sentence was unreasonable.

Thus, taking into account what trial counsel knew and should have known at the time, the undersigned finds that McCormick has not shown that a rational defendant would want to appeal or that he reasonably demonstrated to counsel that he was interested in appealing. The record supports McCormick, at bottom, knew he could appeal if his sentence was unreasonable. His counsel provided a reasonably estimated applicable Guidelines Range. D.E. 343-1 at 6-7. This estimated range was fairly accurate, and, even if overstated, Judge Van Tatenhove made him aware of the actual applicable range and granted multiple downward variances. While McCormick reserved his right to appeal through an open plea and was unhappy after his sentence was announced, this is not sufficient to show that a rational defendant would have wanted to appeal or that he reasonably demonstrated to his counsel that he was interested in appealing when weighed against other facts of the case. The potential sentence McCormick could have received given the applicable statutory range, Guidelines Range, and his criminal history, as opposed to the multiple downward departures applied and sentence he actually received, indicate a rational defendant would not want to appeal the sentence. Further, McCormick has not shown that he reasonably demonstrated to Roberts that he wanted to appeal given these facts. McCormick's sentence was reasonable, within the Guidelines Range, and a result of multiple breaks being granted by Judge

Van Tatenhove. The evidence supports that he was unhappy with his sentence generally, but without more, McCormick has not shown that he demonstrated to Roberts he wanted to appeal.

### C. Prejudice

Even if the undersigned found that Roberts failed to consult with his client about an appeal and that this failure was objectively unreasonable, McCormick's claim still fails because he has not shown that, but for counsel's failure, he would have timely appealed. McCormick admitted he was aware of his appellate rights, including that he had fourteen days from the entry of the Judgment to file a notice of appeal. D.E. 456 at 9, 27-28. McCormick testified that he attempted to call and e-mail Roberts but "never could get an answer" and did not leave any phone messages because "it just rang" with no answer. *Id.* at 14, 32. McCormick did not testify as to how many days, weeks, or months after sentencing these attempted calls and e-mails took place. *See id.* at 14-15, 32-33. The vague timeline does not support a finding that McCormick took any steps to timely appeal.

The only evidence in the record to support that McCormick attempted to contact Roberts regarding his appeal is the letter he wrote six months after his sentencing. D.E. 343-1 at 4-5. McCormick then filed his § 2255 motion nearly four months after he wrote the letter to Roberts, which was ten months after his sentencing. D.E. 316. The Sixth Circuit has weighed such a delay in favor of finding that a defendant would not have timely appealed. *Cross v. United States*, 73 Fed. Appx. 864, 865 (6th Cir. 2003) ("[The defendant] waited nearly eight months after sentencing before asserting in his motion to vacate that he told counsel to file a notice of appeal. During that time, [the defendant] did not seek to file a belated appeal."); *Johnson*, 364 F. App'x at 977 (noting that the defendant waiting almost a full year after sentencing to file his § 2255 motion indicates he was unlikely to have timely appealed). The Sixth Circuit has also found that a defendant's

knowledge of an appeal having little success is another factor indicating he would not have timely appealed. *Johnson*, 364 F. App'x at 977. Indeed, McCormick admitted that Roberts told him any appeal would be frivolous. D.E. 456 at 12.

Thus, the undersigned finds that, even if his trial counsel unreasonably failed to consult with him, McCormick has not shown that he would have timely appealed, and recommends that Ground One be denied.

### V. Ground Two – IAC for Failure to Object to the Presentence Investigation Report

McCormick next claims that his counsel was ineffective for failing to object to the PSR, despite his instructions to do so. D.E. 319 at 3. To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)). "Yet, merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012); *see also Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007) (holding the defendant's IAC claim was "doomed by the fact that she [made] nothing more than conclusory assertions about actual prejudice"); *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (citing *Strickland*, 466 U.S. at 693) ("The defendant must affirmatively prove prejudice.").

Ground Two of McCormick's § 2255 motion is comprised of conclusory allegations, which are insufficient to prove his grounds for relief. McCormick claims that, if his trial counsel had objected to "double counting regarding his prior criminal history," he would have received a lower criminal history score, which would have resulted in a lower sentence. D.E. 319 at 3. However, McCormick fails to identify which of his prior convictions were calculated in error. Further, "not all instances of double counting are impermissible." *United States v. Sanbria-Bueno*, 549 F. App'x

434, 441 (6th Cir. 2013) (quoting *United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003)). For example, the Sixth Circuit has held "it is not impermissible to use a prior conviction to establish an offense level and a criminal history score." *Id.* (citing *United States v. Crace*, 207 F.3d 833, 838 (6th Cir. 2000)).

In his reply memorandum, McCormick indicates that he was precluded from gathering the details related to his claims because this was what "he needed his counsel for in the first place." D.E. 347 at 1. However, McCormick confirmed at his sentencing that he received a copy of the PSR, read it, reviewed it with his trial counsel, and had all of his questions answered by his counsel. D.E. 325 at 3. McCormick bears the burden of proving his allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Because McCormick has failed to explain the basis for his claim, such as which prior convictions he requested his trial counsel to challenge, how they were double counted, why any double counting was in error or any resulting prejudice, this portion of his claim should be denied.

McCormick also states that he "specifically asked his attorney to challenge the prior convictions used to enhance his sentence due to the fact that at least one of those convictions resulted without the benefit of the Sixth Amendment's guarantee to the right of effective counsel." D.E. 319 at 3. McCormick fails to identify which of his prior convictions resulted without the benefit of counsel. However, a review of both the PSR and the KYeCourts website indicates that McCormick was represented by counsel for each of the convictions used in calculating his offense level and career criminal designation. PSR at 24, 26-28. Roberts's affidavit indicates that the prior conviction McCormick took issue with "was approximately 6 years old, and the statute of limitations, in affiant's opinion, had ran." D.E. 344-1 at 2. In his reply memorandum, McCormick argues that this statement indicates that Roberts "was making guesses." D.E. 347 at 2. McCormick

fails to provide any evidence that Roberts's assessment of the issue was incorrect and, again, does not identify which conviction he is challenging.

To the extent McCormick challenges a prior state conviction on any basis other than a denial of the right to counsel, this argument is barred. *Smith v. United States*, 1:05-CV-177, 2005 WL 1719909, at *2 (E.D. Tenn. July 21, 2005) (holding a defendant "can only collaterally attack those state convictions on the basis that he was denied his right to counsel") (citing *United States v. Custis*, 511 U.S. 485, 496 (1994) (holding the right to collaterally attack a prior criminal conviction in a subsequent proceeding for enhancement purposes is limited to the actual denial of counsel)); *see also Daniels v. United States*, 532 U.S. 374, 375 (2001) (extending *Custis* to § 2255 context).

To the extent McCormick argues that a prior state conviction occurred as a result of an actual denial of counsel that enhanced his current sentence, he fails to identify the particular conviction or further expound upon his claim. While McCormick also indicates that he was prevented from challenging the prior convictions due to "external factors," he bears the burden of proving the validity of his claims by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). As noted, the PSR indicates that McCormick was represented by counsel for each of the prior convictions used to enhance his sentence. PSR at 24, 26-28.

McCormick has not provided a sufficient factual basis or legal argument as to the claims involved in Ground Two, when it is his burden to do so. Thus, the undersigned recommends that Ground Two be denied.

## VI. Ground Three – IAC for Failure to Secure or Inform McCormick of a Plea Deal

McCormick clams his trial counsel was ineffective by "failing to either secure a favorable plea deal or to communicate . . . the existence of one." D.E. 319 at 3. Without any supporting authority, McCormick states "when counsel has advised his client to just plead guilty without the benefit of a plea agreement, this constitutes ineffective assistance of counsel." *Id.* In his reply memorandum, McCormick states that he "should have been afforded a much more favorable deal than that contained in the proffered agreement" due to his "minor role in the conspiracy." D.E. 347 at 3. McCormick then seems to assert that his trial counsel could have obtained a plea agreement that "would agree not to advocate for the usage of the prior convictions for the career offender status." *Id.* at 4. McCormick bases his argument on the assertion that "the government is always open to negotiate." *Id.*

No constitutional right to a plea bargain exists, and thus, McCormick had no right or ability to compel the government to offer a plea agreement. *United States v. Sammons*, 918 F.2d 592, 601 (6th Cir. 1990) (quoting *Weatherford v. Bursey*, 429 U.S. 545 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). Thus, to succeed on an ineffective assistance of counsel claim, McCormick must show that his trial counsel failed to inform him of a plea proposal offered by the government. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) ("A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment . . .").

Further, McCormick must also show that a plea offer was actually made by the government to succeed on his ineffective assistance of counsel claim. *Gregory v. United States,* 2:05-CR-64(1), 2013 WL 5350621, at *10 (E.D. Tenn. Sept. 23, 2013) ("Prejudice, in the context of a plea

negotiations, has resulted only where there exists a reasonable probability that petitioner and the court would have accepted the guilty plea, i.e., the one which the government ***actually offered***.") (emphasis added) (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)); *see also United States v. Williams*, CR 7:14-015-DCR, 2017 WL 345873, at *2 (E.D. Ky. Jan. 24, 2017) (finding no ineffective assistance of counsel for failing to obtain a binding plea deal where defendant failed to show the United States ever offered such an agreement).

During McCormick's rearraignment, Roberts and the government stated only one plea offer was made by the government. D.E. 324 at 18-19. McCormick then confirmed that he discussed the plea offer with his trial counsel and turned it down. *Id.* at 19. McCormick has provided no evidence of the existence of any plea proposal other than the one he reviewed with his attorney and subsequently rejected.

McCormick also filed a *pro se* post-hearing brief in which he states that his counsel never showed him "a 15[-]year plea agreement." D.E. 459. He indicates the plea deal was sent to him with his counsel's affidavit in response to the § 2255 motion and that he had never seen the document before. It appears McCormick has mistaken the proposed plea deal he was offered and rejected in this case for a different one. Roberts's affidavit and the proposed plea agreement were both attached to the government's response to the § 2255 motion, which certifies a copy was mailed to McCormick. D.E. 343 at 13.

As confirmed by the parties during the rearraignment, no plea bargain was ever made other than the one McCormick rejected. D.E. 324 at 8-19. That proposed plea agreement indicates that, in exchange for McCormick's guilty plea to Counts One and Four of the Indictment, the government would dismiss any additional counts. D.E. 343-2 at 1. Count One of the Indictment charged McCormick with conspiring to intentionally distribute 50 grams or more of a mixture or

substance containing a detectable amount of methamphetamine.  D.E. 1 at 1-2.  Count Four of the Indictment charged McCormick with knowingly possessing a firearm in furtherance of drug trafficking offenses.  *Id.* at 3.  McCormick was also named in Counts Three and Five of the Indictment.  *Id.* at 2-4.  This corresponds with the description of the plea agreement in McCormick's post-hearing brief: "a 15[-]year plea agreement.  Dismiss two charges on indictment for a plea of guilty on the other two [counts] of conspiracy and a 924(c)(1)(A)."  D.E. 459.

Although McCormick's brief indicates the proposed plea deal included that he would plead guilty to two counts of conspiracy, this appears to be a typing error as the Indictment only includes one conspiracy charge against him.  *See* D.E. 1.  Also, it appears McCormick misread the proposed plea agreement to mean that he would only receive a sentence of fifteen years of imprisonment in exchange for his plea.  D.E. 459.  This is inaccurate.  The proposed plea deal indicates the statutory minimums for Counts One and Four, ten years and five years, respectively.  D.E. 343-2 at 2.  The proposed plea bargain also indicates that the statutory maximum McCormick faced on both counts was life imprisonment.  D.E. 343-2 at 2.  However, it does not contain any agreement as to the sentence.

McCormick has failed to show that the government ever offered a plea bargain other than the one he reviewed with his trial counsel and subsequently rejected.  Therefore, Ground Three is plainly without merit and the undersigned recommends that it be denied.

### VII. Conclusion

For these reasons, the undersigned **RECOMMENDS** that McCormick's § 2255 motion be **DENIED.**

The undersigned further **RECOMMENDS** that a Certificate of Appealability issue only with respect to Ground One.  Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 Proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court believers its findings above are correct. However, the layered analysis under *Flores-Ortega* and *Johnson* could be applied by a reasonable jurist to find that Roberts did not consult with McCormick concerning an appeal and that either a rational defendant would have wanted to appeal or McCormick demonstrated he was interested in doing so, and that he would have timely appealed. However, no reasonable jurist would find the assessments on the merits above as to Grounds Two or Three to be wrong or debatable; thus, no Certificate of Appealability should issue as to those Grounds.

Finally, the parties are notified that any objection to, or argument against, denial of this motion must be asserted properly and in response to this Report and Recommendation. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 23rd day of February, 2022.



Signed By:

*Hanly A. Ingram*

United States Magistrate Judge