UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MICHAEL SHANE McCORMICK, Sr.  )<br>  )<br>  Defendant.  )<br>  ) | Case No. 6:16-cr-00056-GFVT-HAI-2<br>Related Civil No. 6:19-cv-00198-GFVT-HAI<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the Recommended Disposition filed by United States Magistrate Judge Hanly A. Ingram. [R. 489.] The Defendant, Michael Shane McCormick, Sr., has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [R. 316; R. 319.] Consistent with local practice, Judge Ingram reviewed the motion and ultimately recommends that the Court deny Mr. McCormick's § 2255 motion in its entirety. [R. 489 at 27.] For the reasons that follow, Mr. McCormick's objections will be **OVERRULED**, and his motion will be **DENIED** in its entirety.

**I**

Mr. McCormick consented to plead before Judge Ingram, and on June 9, 2017, Mr. McCormick entered an open guilty plea to conspiring to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C. § 846 (Count 1s); possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a

Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count 3s); possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4s); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 5s).  [R. 155; R. 156.]  Mr. McCormick received a three-level reduction for acceptance of responsibility, and during sentencing on October 9, 2018, the Court granted the Government's motion for an additional one-level downward departure, which reduced Mr. McCormick's offense level to 33.  [R. 326 at 10.]

With a criminal history category of VI because of his career offender status[1] and an offense level of 33, Mr. McCormick's Guidelines Range became 235 to 293 months, with an additional 60 consecutive months because of the 18 U.S.C. § 924(c) offense.  *Id.* at 10–11.  Given Mr. McCormick's age, the Court granted a slight downward variance from the bottom of the Guidelines Range and sentenced Mr. McCormick to 216 months as to each of Counts 1s, 3s, and 5s, all to run concurrently, and 60 months as to Count 4s to run consecutively to Counts 1s, 3s, and 5s, for a total prison term of 276 months.  [R. 300 at 2.]

Mr. McCormick signed the Advice of Right to Appeal form at sentencing, which notified him that any notice of appeal was due within fourteen days.  [R. 299.]  Neither Mr. McCormick nor his trial counsel, the Hon. H. Wayne Roberts, filed a notice of appeal.  On August 16, 2019, approximately ten months after his sentencing, Mr. McCormick timely filed his § 2255 motion.  [R. 316.]

---

[1] As provided in the PSR, "[t]he defendant is a career offender given his conviction in Counts 1 and 3; and he is also an armed career criminal given his conviction in Count 5. The guideline calculations have been computed as to career offender since the calculation provides for the highest offense level."  [R. 491 at 10.]

**II**

**A**

In Mr. McCormick's § 2255 motion, which he filed on August 16, 2019,[2] he asserts that trial counsel was ineffective in the following three ways: (1) for failing to file a notice of appeal; (2) for failing to object to the Presentence Investigation Report; and (3) for failing to secure a favorable plea deal or communicate the existence of one. [R. 319 at 2–4.] Judge Ingram appointed the Hon. Bryan Sergent to represent Mr. McCormick for the purposes of an evidentiary hearing and briefing on the issue of whether Mr. McCormick's trial counsel failed to file a notice of appeal. [R. 454.]

On February 23, 2022, Judge Ingram issued a Recommended Disposition in which he thoroughly considered each of Mr. McCormick's claims and determined that Mr. McCormick is not entitled to relief. [R. 489.] In his Recommended Disposition, Judge Ingram laid out the *Strickland* elements required to prevail on an ineffective assistance of counsel claim under § 2255[3] and then responded to each of Mr. McCormick's arguments. *Id.*

**1**

First, Mr. McCormick argues that on the day he was sentenced, "he specifically instructed his attorney, Wayne Roberts, to file Notice of Appeal" and that his attorney "said he would." [R. 319 at 2.] Mr. McCormick argues that after several months went by and he had not heard anything, "it became readily apparent that the attorney had failed to file Notice of Appeal

---

[2] Mr. McCormick failed to sign his first § 2255 motion under penalty of perjury. [R. 316.] Judge Ingram ordered Mr. McCormick to resubmit a signed version of his § 2255 motion, which he filed on September 12, 2019. [R. 319.] In all other respects, the second § 2255 motion is identical to Mr. McCormick's first § 2255 motion. As Judge Ingram notes, "[t]hough the filing at Docket Entry 319 serves as McCormick's official § 2255 motion, the filing at Docket Entry 316 tolled the statute of limitations." [R. 489 at 3–4 n.3.]

[3] To succeed on an ineffective assistance of counsel claim, a defendant must (1) "show that counsel's performance was deficient," and (2) "show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

3

on behalf of his client's instructions." *Id.* Following briefing from the parties, Judge Ingram ordered an evidentiary hearing as to whether "counsel failed to file a notice of appeal when allegedly instructed to do so." [R. 361 at 2.] In his Recommended Disposition, after carefully evaluating the hearing testimony and briefing, Judge Ingram found that Mr. McCormick had failed to meet his burden "of showing by a preponderance of the evidence that he expressly instructed his trial counsel to file an appeal." [R. 489 at 13.] Judge Ingram specifically found, as to the conflicting witness testimony of Mr. McCormick and Mr. Roberts, that Mr. Roberts's "testimony is more credible because it is consistent with other matters in the record." *Id.*

Next, Judge Ingram determined that Mr. McCormick conceded that Mr. Roberts consulted with Mr. McCormick about an appeal before sentencing. *Id.* at 17. However, because Mr. Roberts "testified that he did not discuss what the strengths and weaknesses of the case and potential appeal were" with Mr. McCormick, Judge Ingram analyzed whether the failure was objectively unreasonable. *Id.* at 17–18. Ultimately, Judge Ingram concluded that even if Mr. Roberts failed to consult with Mr. McCormick regarding an appeal, Mr. McCormick "has not shown that a rational defendant would want to appeal or that he reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 20. Judge Ingram also determined that Mr. McCormick failed to demonstrate the *Strickland* prejudice prong and ultimately recommended that Ground One be denied. *Id.* at 22.

**2**

Next, Mr. McCormick argues that his trial counsel was ineffective for failing to object to the PSR "relating to double counting regarding criminal history and relating to the prior convictions used to enhance the petitioner's sentence." [R. 319 at 3.] Mr. McCormick argues that if his attorney had objected to the double counting of his prior criminal history, "he would

have enjoyed the benefit of having been assessed a lower criminal history score which would have equated into a lower sentencing guideline and subsequently a lower imposed sentence." *Id.* Mr. McCormick also argues that his attorney should have attacked "the validity of prior state convictions(s)" because he should have been given the opportunity to "collaterally attack the validity of prior state conviction(s) used to enhance [his] federal sentence." *Id.*

After reviewing the record, Judge Ingram determined that Mr. McCormick's argument "is comprised of conclusory allegations, which are insufficient to prove his grounds for relief." [R. 489 at 22.]  Judge Ingram noted that Mr. McCormick failed to "identify which of his prior convictions were calculated in error." *Id.*  Next, Judge Ingram pointed out that "not all instances of double counting are impermissible." *Id.* (quoting *United States v. Sanbria-Bueno*, 549 F. App'x 434, 441 (6th Cir. 2013)).  For instance, "it is not impermissible to use a prior conviction to establish an offense level and a criminal history score." *Id.* at 23 (quoting *Sanbria-Bueno*, 549 App'x at 441).  Although Mr. McCormick argues that he was prevented from gathering details related to his claims even though that was what "he needed his counsel for in the first place," Judge Ingram noted that Mr. McCormick confirmed at sentencing he had received a copy of his PSR, had read and reviewed it with counsel, and had all of his questions answered by counsel. *Id.*

Furthermore, Mr. McCormick failed to identify which of his prior convictions occurred without the benefit of counsel, and "a review of McCormick's PSR and the KYeCourt's website indicates that McCormick was represented by counsel for each of the convictions used in calculating his offense level and career criminal designation." *Id.* (citing [R. 491 at 24, 26–28]). Judge Ingram also stated that "[t]o the extent McCormick challenges a prior state conviction on any basis other than a denial of the right to counsel, this argument is barred." *Id.* at 24 (citing

5

*Smith v. United States*, WL 1719909, at *2 (E.D. Tenn. July 21, 2005)). Ultimately, Judge Ingram recommended that Ground Two be denied. *Id.*

### 3

Finally, Mr. McCormick argues that his counsel was ineffective for "failing to either secure a favorable plea deal or to communicate to the petitioner the existence of one." [R. 319 at 3.] Mr. McCormick states that "when counsel has advised his client to just plead guilty without the benefit of a plea agreement, this constitutes ineffective assistance of counsel." *Id.* In his reply memorandum, Mr. McCormick argues that he "should have been afforded a much more favorable deal than that contained in the proffered agreement" because of his "minor role in the conspiracy." [R. 347 at 3.]

Judge Ingram first noted that "[n]o constitutional right to a plea bargain exists." [R. 489 at 25 (citing *United States v. Sammons*, 918 F.2d 592, 601 (6th Cir. 1990)).] In the plea agreement context, Judge Ingram found that Mr. McCormick had to show that his trial counsel "failed to inform him of a plea proposal offered by the government." *Id.* at 25 (citing *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003)). During the rearraignment, Mr. McCormick's trial counsel and the Government both stated that only one plea offer was made by the Government, and Mr. McCormick "then confirmed that he discussed the plea offer with his trial counsel and turned it down." *Id.* at 26 (citing [R. 324 at 18–19]). Although Mr. McCormick argues that counsel never showed him "a 15[-]year plea agreement," Judge Ingram noted that the plea agreement Mr. McCormick is referencing appears to be the same one Mr. McCormick received. That plea agreement noted the statutory minimums for Counts One and Four were ten years and five years, respectively. *Id.* at 27. However, the statutory maximum Mr. McCormick

faced was life imprisonment on both counts. *Id.* The plea agreement did not specify an agreed sentence. *Id.* Ultimately, Judge Ingram recommended that Ground Three be denied. *Id.*

Finally, Judge Ingram determined that reasonable jurists would not debate the denial of Mr. McCormick's § 2255 motion or conclude that the issue warranted further review as to Grounds Two and Three but could as to Ground One. *Id.* at 27–28. Because of this, Judge Ingram recommended that a certificate of appealability be granted as to Ground One and denied as to Grounds Two and Three. *Id.* at 28.

B

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Recommended Disposition or else waive his rights to appeal. In order to receive de novo review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection must "explain and cite specific portions of the report which [defendant] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotations and citations omitted). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

After receiving Judge Ingram's Recommended Disposition, Mr. McCormick's counsel timely filed objections to Ground One, and Mr. McCormick timely filed objections to Ground Three. [R. 492; R. 495.] However, no objections were filed as to Ground Two, that Mr. McCormick's trial counsel was ineffective for failing to object to the PSR. Because no objections were filed against Ground Two, the Court need not review that portion of Judge

7

Ingram's Recommended Disposition. *Garrison v. Equifax Info. Servs.*, LLC, 2012 WL 1278044, at *1 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made.") (citing *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985)).[4] However, the objections to Grounds One and Three are sufficiently definite to trigger the Court's obligation to conduct a de novo review, and the Court will review those specific objections. *See* 28 U.S.C. § 636(b)(1)(C). The Court has satisfied its duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules.

1

Mr. McCormick raised three objections to Judge Ingram's Recommended Disposition pertaining to Ground One. First, Mr. McCormick argues that he did show by a preponderance of the evidence that he directed his trial attorney to appeal on the day he was sentenced. [R. 493 at 1.] Second, Mr. McCormick objected to Judge Ingram's finding that Mr. McCormick's trial attorney appropriately consulted with him regarding his ability to appeal. *Id.* Finally, Mr. McCormick objects to Judge Ingram's finding that he was not prejudiced by a lack of consultation regarding his appeal rights.

As discussed *supra*, a movant is required to demonstrate both that his counsel's representation fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 687–88. Courts apply the three-part

---

[4] Although not required to do so, the Court has reviewed Ground Two and agrees with Judge Ingram's thorough analysis. The Court finds that Ground Two is comprised of conclusory and unsubstantiated allegations. Mr. McCormick did not identify which prior convictions were calculated in error, did not explain how double counting was impermissible in his case, and failed to address the fact that he received a copy of his PSR at sentencing and reviewed it and had all his questions answered. As such, the Court will adopt Judge Ingram's recommendation as to Ground Two. The only related argument Mr. McCormick made in his objection was that his trial counsel failed to request that his jail credit from a prior state sentence also be counted as part of his federal sentence. [R. 492 at 2.] However, Mr. McCormick fails to proffer any reason why his state and federal sentences should have run concurrently or show that any jail credit should have been awarded. Therefore, this argument fails.

sequential test articulated in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), "[t]o determine whether counsel's failure to file a notice of appeal was objectively unreasonable." *Short v. United States*, 786 F. Supp. 2d 1348, 1350 (W.D. Mich. 2011). First, a court "must determine whether the defendant gave counsel express instructions regarding an appeal." *Flores-Ortega*, 528 U.S. at 477. The "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment. *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). A "[m]ovant must show by a preponderance of the evidence that he expressly requested that Counsel file a notice of appeal, and Counsel failed to do so." *Short*, 786 F. Supp. 2d at 1351 (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

Second, if there is no express instruction to file a notice of appeal, a court must ask "whether counsel consulted with the defendant about an appeal." *Id.* (quoting *Johnson v. United States*, 364 F. App'x at 976, 975 (6th Cir. 2010)). Consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 478).

Third, if counsel fails to consult with the movant, a court must ask "whether the failure to consult was objectively unreasonable." *Id.* (quoting *Johnson*, 364 F. App'x at 976). A court may find objective unreasonableness if either (1) "a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal)," or (2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

a

Under the first objection to Ground One, Mr. McCormick specifically argues that (1) he consistently testified that he asked Mr. Roberts on the day he was sentenced that he wanted to appeal; (2) prior to sentencing, he had made it explicitly known to Mr. Roberts that if he "was upset or didn't like the sentence," then he would want to appeal; (3) he attempted to contact Mr. Roberts' office but could not reach him; and (4) in a letter sent months after sentencing, he asked Mr. Roberts why he had not filed an appeal. *Id.* at 4.

A review of the hearing testimony demonstrates that Mr. McCormick and Mr. Roberts agree that Mr. McCormick was upset following sentencing. The parties also agree that Mr. Roberts recommended Mr. McCormick take an open plea to preserve his appellate rights. [R. 456 at 56.] However, the parties disagree about whether Mr. McCormick asked Mr. Roberts to file an appeal following sentencing. Mr. McCormick testified that after the sentence, he was "a little heated." [R. 456 at 13.] He further testified that when Mr. Roberts told him they could file an appeal, Mr. McCormick responded "[w]ell, you need to do that." *Id.* Mr. McCormick also testified that he tried to call and email Mr. Roberts but never heard from him. *Id.* Several months later, Mr. McCormick wrote Mr. Roberts a letter in which he stated, "I know you worked hard for me and did your best, why you didn't go on and file a[n] appeal for me I don't know." [R. 343-1 at 4.]

Conversely, Mr. Roberts testified that although Mr. McCormick was upset following the sentencing, Mr. McCormick never told Mr. Roberts "he definitely wanted to appeal." [R. 456 at 57.] Mr. Roberts testified that he has been practicing law for approximately thirty years and has always filed a notice of appeal, which is a simple one to one-and-a-half page document, on behalf of his clients who request them regardless of whether he agrees with the decision to

10

appeal.[5]  *Id.* at 46.  Although Mr. Roberts testified that he was suffering from some health issues while representing Mr. McCormick, he states they did not affect his representation.  *Id.* at 66–67, 79.

Ultimately, the question is whether Mr. McCormick can demonstrate by a preponderance of the evidence that he expressly asked Mr. Roberts to file an appeal after sentencing.  The parties' testimony directly conflicts as to this point.  However, the Court has reviewed the record and finds that Mr. McCormick has not satisfied his burden.  As Judge Ingram noted, "[Mr.] McCormick's [testimony] directly relates to his own self-interest and has no corroborating support."[6]  [R. 489 at 13.]  Although Mr. McCormick argues that he asked his trial counsel to file an appeal immediately after sentencing, he could produce no witness to corroborate this request.  Further eroding Mr. McCormick's argument, he testified that his memory of the relevant events was not complete, stating "I can't remember all of the facts."  [R. 456 at 7.]

As for the issue of Mr. McCormick's prior statements regarding his desire to appeal, Mr. McCormick testified that he told Mr. Roberts that if he lost at trial, he would seek an appeal.  [R. 456 at 7, 9–10.]  This assertion later became moot when Mr. McCormick decided to plead guilty instead of going to trial.  Mr. McCormick also testified that he told Mr. Roberts that he would want Mr. Roberts to appeal if things "turn[ed] out bad for sentencing and [he] didn't feel like [he] was treated fairly."  *Id.* at 11.  However, Mr. Roberts testified that he spoke with Mr. McCormick about the appeals process prior to sentencing, and Mr. Roberts told Mr. McCormick

---

[5] Mr. Roberts testified that in the twenty years he has been on the CJA panel, he has received approximately ten to fifteen appointments to represent federal criminal defendants per year, and he has filed approximately two to three appeals to the Sixth Circuit annually.  [R. 456 at 45–47.]

[6] While it is true as Mr. McCormick argues that "it would be bad for [Mr. Roberts's] substantial federal practice" to be found to have rendered ineffective assistance of counsel [R. 493 at 5], that fact alone does not render his testimony uncredible or suspect.  Furthermore, the burden is on Mr. McCormick, not Mr. Roberts to demonstrate by a preponderance of the evidence that Mr. Roberts rendered ineffective assistance.  *Short*, 786 F. Supp. 2d at 1351 (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

11

to inform him if he wanted to file an appeal. *Id.* at 82. Specifically, Mr. Roberts testified to the following:

> All the discussions about appellate rights and appealing came from me to him. He just listened. And I told him that if, you know, that if he -- wanted to appeal a sentence that was unreasonable, then just let me know, and we would do that. Again, in this -- in this case, the sentence was extremely reasonable.

*Id.* Mr. McCormick's prior statements and Mr. Roberts's testimony confirm that Mr. Roberts clearly informed Mr. McCormick that if he wanted to appeal, he simply needed to let Mr. Roberts know. However, Mr. McCormick has not demonstrated, despite his prior statements, that he did in fact explicitly ask Mr. Roberts to file an appeal on his behalf.

Mr. McCormick also argues that he tried to email and call Mr. Roberts following sentencing but his communication went unanswered. [R. 495 at 5.] However, Mr. McCormick conceded that records of his emails and phone calls should have remained accessible, but he could provide no email or phone records to corroborate his argument. As for the letter Mr. McCormick wrote to Mr. Roberts six months after he was sentenced, the language "[w]hy you didn't go on and file a[n] appeal for me I don't know," cannot reasonably be construed as Mr. McCormick expressly telling Mr. Roberts to file an appeal. [R. 343-1 at 4.]

The facts as provided by Mr. McCormick stand in contrast to Mr. Roberts's sworn affidavit. Mr. Roberts stated that after the sentencing, he told Mr. McCormick to let him know if he wanted to "appeal any aspect of his sentence or conviction, but Mr. McCormick did not do so," only responding, "[t]hanks a lot, you were no help" and walking out. [R. 344-1 at 1.] "A petitioner's self-serving statements in an affidavit that are contradicted by a credible version of events in an affidavit from his trial counsel may be incredible as a matter of law." *United States v. Walls*, 2008 WL 927926, at *12 (E.D. Ky. Apr. 4, 2008); *see also Cummings v. United States*,

84 F. App'x 603, 604-05 (6th Cir. 2003) (holding that a district court may credit counsel's affidavit insofar as it indicates the client did not ask him to file an appeal).

b

Mr. McCormick next objected to Judge Ingram's finding that Mr. Roberts adequately consulted with him about an appeal. In his Recommended Disposition, Judge Ingram made two key findings. First, Judge Ingram found, according to Mr. McCormick's own testimony, that Mr. Roberts discussed the risks and rewards of appealing with him before sentencing. [R. 489 at 17.] Because Mr. McCormick admitted that Mr. Roberts discussed the risks and rewards of appealing with him, "then counsel cannot be found to have acted unreasonably unless he ignored his client's express wishes." *Johnson*, 364 F. App'x at 975. Second, Judge Ingram found that even if Mr. Roberts failed to consult with Mr. McCormick about an appeal, Mr. McCormick failed to demonstrate that a rational defendant would want to appeal or that he reasonably demonstrated to counsel that he was interested in appealing. *Id.* at 20.

Mr. McCormick objects to these findings, arguing that "Mr. Roberts acknowledged that he had a duty to consult with his client to determine if he wanted to appeal" and failed to do so. [R. 495 at 8.] Furthermore, Mr. McCormick argues that although there was "no question that Mr. McCormick was interested in an appeal and took actions throughout this case to preserve his right to appeal," Mr. Roberts failed to contact him after the sentencing hearing. *Id.*

After review, the Court finds that Mr. Roberts adequately consulted with Mr. McCormick about an appeal. First, as Judge Ingram noted, Mr. McCormick testified that before sentencing, Mr. Roberts consulted with him about an appeal and the risks and rewards of appealing. [R. 489 at 17 (citing R. 456 at 12).] Furthermore, the fact that Mr. McCormick did not confer with Mr. McCormick after the sentencing is not dispositive. *See Johnson*, 364 F. App'x at 976 (finding

13

that "[a]lthough the better practice is always to confer with the client after sentencing, regardless of the discussion that has preceded it," *Flores-Ortega* does not require counsel to do so).

However, if Mr. Roberts did not consult with Mr. McCormick regarding an appeal, and Mr. Roberts testified that he did not, then the Court must analyze whether the failure to consult was objectively unreasonable by determining whether "(1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 975 (quoting *Flores-Ortega*, 528 U.S. at 480). The Court "must consider all the information counsel knew or should have known." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). Factors for the Court to consider include "whether the conviction follows a trial or guilty plea both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to the judicial proceedings," and also "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Flores-Ortega*, 528 U.S. at 480.

Here, Mr. McCormick pleaded guilty and sought to cooperate with the United States. These facts indicate a desire by Mr. McCormick to "seek[] an end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 480. Furthermore, Mr. McCormick testified that Mr. Roberts told him an appeal would likely be frivolous, and as Judge Ingram noted, Mr. McCormick "has not presented any non-frivolous grounds for an appeal." [R. 489 at 18.]

In addition, as Judge Ingram found, Mr. Roberts's opinion as to the applicable Guidelines Range that he shared with Mr. McCormick was reasonably accurate, "so when [Mr.] McCormick received a sentence below the Range an appeal was not reasonably likely." *Id.*  Mr. Roberts memorialized in a letter to Mr. McCormick on April 30, 2017, that Mr. McCormick's Guidelines

14

Range would likely be 322–387 months, and given his career offender designation he "could be looking at life." [R. 343-1 at 6.] The letter also clearly indicated that this was only his opinion and that Mr. McCormick could not know the actual Guidelines Range until after the PSR was completed. *Id.* Mr. McCormick's Guidelines Range ended up being 235 to 293 months, plus an additional 60 months to run consecutive because of the 18 U.S.C. § 924(c) offense. This Court varied downward slightly and sentenced Mr. McCormick to a total term of 276 months.

Furthermore, as Judge Ingram noted, Mr. Roberts testified that his numerous conversations with Mr. McCormick about his appeal rights were one-sided, with Mr. Roberts talking and Mr. McCormick merely listening, and Mr. Roberts also told Mr. McCormick to let him know "if he wanted to appeal a sentence that was unreasonable." [R. 556 at 82.] Ultimately, the record demonstrates that Mr. McCormick and his counsel discussed Mr. McCormick's appeal rights and how he could appeal an unreasonable sentence, counsel laid out the possible Guidelines Range before Mr. McCormick chose to plead guilty, and Mr. McCormick received a sentence below the Guidelines Range. Although counsel for Mr. McCormick objects that "[t]he appeal in this case had no downside for the defendant," that is not the standard. [R. 493 at 9.] Ultimately, Mr. McCormick has failed to show that a rational defendant would want to appeal or that he reasonably demonstrated to Mr. Roberts that he wanted to appeal, and Mr. McCormick's objections will be overruled.

c

Finally, the Court notes that Mr. McCormick was not prejudiced even if Mr. Roberts failed to consult with him about an appeal. Mr. McCormick admitted that he knew of his appeal rights, including that he had fourteen days from the entry of judgment to file a notice of appeal. [R. 456 at 9, 27–28.] As discussed *supra*, although Mr. McCormick testified that he tried to call

and email Mr. Roberts, his testimony is not corroborated, and Mr. McCormick failed to specify whether those calls and emails even occurred within the fourteen-day notice of appeal timeframe. Furthermore, Mr. McCormick's letter to Mr. Roberts was not written until six months after sentencing, and Mr. McCormick did not file his § 2255 motion until approximately ten months after sentencing. [R. 316; R. 343-1 at 4–5.] The Sixth Circuit has found that such a lengthy delay in filing the motion to vacate weighs against a finding that Mr. McCormick would have timely appealed. *See Cross v. United States*, 73 F. App'x 864, 866 (6th Cir. 2003) (finding a nearly eight-month delay between sentencing and filing motion to vacate indicated "no interest in an appeal"); *see also Johnson*, 364 F. App'x at 977 (finding that knowledge of right to appeal and failure to contact counsel "until two to three months after sentencing" revealed "an improbability that Johnson would have timely appealed"). Furthermore, Mr. McCormick testified that he and Mr. Roberts discussed the risks and rewards of appealing before sentencing, and Mr. Roberts informed him that an appeal would likely be frivolous. [R. 456 at 12.] Therefore, given Mr. McCormick's delay in writing the letter and filing the motion, in addition to the knowledge that the appeal would be frivolous, the Court "cannot say that there is a reasonable probability [Mr. McCormick] would have timely appealed." *Johnson*, 364 F. App'x at 977. Mr. McCormick's objection is overruled.

### 2

Next, Mr. McCormick objects to Judge Ingram's recommendation that Ground Three, trial counsel's failure to "either secure a favorable plea deal or to communicate to the petitioner the existence of one," [R. 319 at 3] should be denied. Mr. McCormick argues that Mr. Roberts "must have been confused" when he stated at sentencing that Mr. McCormick had only been offered one plea agreement because "evidently there was a second plea offer that was offered

16

that he never showed me or that we had discussed." *Id.* Mr. McCormick argues that there was a "plea offer of 15 years," which he "would have signed," and the "one [he] turned down" for "[two] life sentences." *Id.* at 1–2.

As to the first argument, that Mr. McCormick's trial counsel failed to secure a favorable plea deal, no constitutional right to a plea offer exists. *United States v. Martin*, 516 F. App'x 433, 443 (6th Cir. 2013) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.") (quoting *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)). Therefore, this argument is without merit.

However, counsel is required to notify their client of a prosecutor's plea offer. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (finding that if a defense attorney fails "to notify his client of a prosecutor's plea offer," this "constitutes ineffective assistance of counsel under the Sixth Amendment"). This is true because an individual's "right to effective assistance extends to the plea-bargaining process." *Rodriguez-Penton*, 905 F.3d 481, 489 (6th Cir. 2018). Here, Mr. McCormick objects to Judge Ingram's finding that "no plea bargain was ever made other than the one McCormick rejected." [R. 489 at 26.] In his objection, Mr. McCormick reiterates that counsel never showed him a fifteen-year plea deal. [R. 492.]

However, the evidence indicates the United States only ever offered one plea agreement in this case, and that Mr. McCormick was not only aware of this plea agreement but rejected it. Mr. McCormick only produced one plea agreement, and during the rearraignment, both Mr. McCormick's trial counsel and the Government stated that only one plea offer was ever made to Mr. McCormick. [R. 319 at 18–19.] Trial counsel for Mr. McCormick discussed this plea offer with Mr. McCormick, and Mr. McCormick turned it down. *Id.* at 19. As for the confusion regarding the existence of one plea offer for fifteen years and one for two life sentences, it

appears that Mr. McCormick may have simply misread the proposed plea agreement he received. The plea agreement provides that "[t]he statutory punishment for Count One is imprisonment for not less than 10 years and not more than life," and "for Court Four is not less than 5 years nor more than life imprisonment" to be served consecutive to Count One. [R. 343-2 at 3.] However, the fact the statutory minimums for Counts One and Four are ten and five years respectively does not mean that Mr. McCormick would have only received a fifteen-year sentence. In fact, the proposed plea agreement did not contain any agreement between the parties as to the sentence. Ultimately, the Court finds that Mr. McCormick was made aware of, and indeed rejected, the only plea agreement in this case. Therefore, this objection will be overruled.

### C

The final issue is whether a certificate of appealability should issue as to any of Mr. McCormick's claims. A certificate of appealability may issue where the movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). It is the reviewing court's role to indicate what specific issues satisfy the "substantial showing" requirement. 28 U.S.C. §2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Although Judge Ingram determined that Mr. McCormick failed to show by a preponderance of the evidence that he instructed his counsel to file an appeal, he determined that a reasonable jurist could interpret the record and the testimony differently. [489 at 28.] Therefore, Judge Ingram determined that a Certificate of Appealability should only issue as to Ground One: whether Mr. McCormick instructed his counsel to file an appeal. *Id.* Mr.

18

McCormick did not object to Judge Ingram's recommendation, and the Court having reviewed the record and filings agrees that the only issue for which a certificate of appealability should issue is the filing of an appeal. Reasonable jurists would not find the merits assessments of Grounds Two or Three to be wrong or debatable, and therefore no Certificate of Appealability will issue as to those grounds. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Judge Ingram's Recommended Disposition **[R. 489]** is **ADOPTED** as and for the Opinion of the Court;

2. Mr. McCormick's motion to vacate his sentence under § 2255 **[R. 316]** is **DENIED AS MOOT**;

3. Mr. McCormick's motion to vacate his sentence under § 2255 **[R. 319]** is **DENIED WITH PREJUDICE**;

4. A Certificate of Appealability is **GRANTED** as to Ground One and **DENIED** as to Grounds Two and Three;

5. **JUDGMENT** in favor of the United States shall be entered contemporaneously herewith; and

6. Mr. McCormick's collateral proceeding is **DISMISSED AND STRICKEN** from the Court's active docket.

This the 7th day of July, 2022.

*signature*

Gregory F. Van Tatenhove
United States District Judge